OPINION OF THE COURT
Louis P. Gigliotti, S.
Pending before the court is a petition to discover property withheld or obtain information, which was filed pursuant to Surrogate’s Court Procedure Act § 2103 by Andrew A. Murphy as executor of Stanley Raymond Murphy. Filed with the petition is the supporting affidavit of Malorie A. Carbone, Esq., attorney for the estate, with multiple exhibits. The petition alleges that the decedent’s ex-wife, Gale A. Murphy, has knowledge or information about a 2009 Honda Civic, VIN xxxxxxxx, thought to be owned in whole or in part by the decedent at the time of his death. An examination was held, at which Ms. Murphy and her daughter, Jane Vail, gave testimony as to what they knew about this car.
Following the examination, the court directed Ms. Murphy to file a verified answer and pay the accompanying filing fee. She thereafter submitted a letter to the court, which she termed “an answer petition.” The court advised Ms. Murphy by correspondence from the Principal Court Attorney of the following: (1) her paperwork did not qualify as an answer in these proceedings, because it was not verified and did not assert a claim of title or right to possession of the vehicle, as is required under SCPA 2104 (2); (2) her failure to file an answer would be deemed as interposing a general denial to the allegations in the petition, and the burden of proof remained with the executor to make a prima facie showing of entitlement to the vehicle (see Matter of Cosgrove, NYLJ, July 8, 1996 at 5, col 1 [Sur Ct, Suffolk County 1996]); (3) she could appear on the continuation date for the inquest and was provided with a court appearance notice; and (4) the court recommended Ms. Murphy seek the advice of legal counsel.
Ms. Murphy did not come to court on the continuation date of the inquest. Ms. Carbone called Sharon Puglio, assistant manager of the collections department at AmeriCU Credit Union, to testify as to a loan taken out by Ms. Murphy and the decedent in connection with the purchase of the 2009 Honda *897 Civic. Copies of Credit Union records in connection with this loan were admitted into evidence. At the conclusion of the proceeding, the court asked Ms. Carbone to submit a letter brief addressing certain substantive issues, and Ms. Carbone timely complied.
Upon review of all of the testimony and documentary evidence, and considering the legal arguments made by Ms. Carbone on behalf of the executor, the court makes the following findings.
The retail certificate of sale, dated May 2, 2013 and issued by the New York State Department of Motor Vehicles for the 2009 Honda Civic, lists the names of decedent and Ms. Murphy as the purchasers. No survivorship language is included. Auto insurance certificates were issued only in Ms. Murphy’s name. Ms. Murphy drove and warehoused the car. As of December 23, 2015, which is the date of Ms. Murphy’s “answer petition,” the vehicle remained in her possession.
Funds to purchase the 2009 Honda Civic were obtained from a loan for $18,080.11 through the Credit Union. The note, termed a retail installment agreement (hereinafter agreement), lists both Ms. Murphy and the decedent as buyers, and both parties signed in that capacity. The agreement provides, “[i]f there is more than one Buyer, each of us will be obligated, separately and together, for all sums due [the Credit Union] and the performance of all agreements as provided in this Contract.” Ms. Murphy, however, also signed in the section for cosigners, which reads in pertinent part, “I, the . . . ‘CoSigner,’ promise to pay to [the Credit Union] all sums due on this Contract and to perform all agreements in this Contract. I intend to be legally bound by all the terms of this Contract, separately and together, with the Buyer.” Ms. Murphy testified she did not have good credit, such that the decedent agreed to help obtain the loan.
Ms. Vail testified that she went to the dealership with the decedent at the time the car was purchased. She said the salesperson wanted to put the vehicle title in decedent’s name alone, but the decedent insisted Ms. Murphy’s name be included. Ms. Vail acknowledged the decedent was doing her mother a favor by helping her purchase this car, and that her mother agreed to make the loan payments. Ms. Murphy testified that she paid for all vehicle maintenance.
According to the Credit Union records, Ms. Murphy made scheduled payments on the vehicle loan until the time of *898 decedent’s death on February 2, 2015. Ms. Murphy testified that she made the payments from the $400 monthly maintenance she received from decedent as a result of their divorce. Account notes show Ms. Murphy called the Credit Union on February 5, 2015 to ask about a loan extension agreement. On February 6, 2015, Ms. Murphy advised the Credit Union that with decedent’s maintenance payments coming to an end, her loan payments would suffer. Various conversations were had between Ms. Murphy and Credit Union representatives about the viability of a loan extension agreement in light of the permanent change in Ms. Murphy’s financial circumstances.
On February 24, 2015, the Credit Union deducted from decedent’s savings account the remaining principal balance on the loan, in the amount of $13,646.26.[1] In making this decision, the Credit Union relied upon language in the agreement, which read that in addition to giving a security interest in the vehicle, “you [the Credit Union] have the right to apply any sums that I [Buyer] have on deposit with you [the Credit Union].” The Credit Union further relied upon a similar right of setoff provided for in the membership agreement signed by the decedent. Although Ms. Murphy is also a member of the Credit Union, she appears to have had on deposit nothing more than the $5 minimum balance required to maintain an account, i.e., she had no funds available against which a right of setoff could be exercised.
The executor claims decedent’s estate is half owner of the 2009 Honda Civic, and thus Ms. Murphy is in possession of estate property. The court agrees. According to Estates, Powers and Trusts Law § 6-2.2 (a), “[a] disposition of property to two or more persons creates in them a tenancy in common, unless expressly declared to be a joint tenancy.” With respect to motor vehicles, courts have found that when two names appear on a title, without an express indication of rights of survivorship, the owners are tenants in common. (See Matter of Donahue, 262 AD2d 840, 841 [3d Dept 1999]; Matter of De Roo, 148 Misc 2d 856, 857-858 [Sur Ct, Yates County 1990].)
As for the value of the vehicle on the day of decedent’s death, Ms. Carbone submitted an affidavit signed by her secretary, Patricia L. Goodney, sworn to on April 8, 2016. Attached as exhibit A to the affidavit is a printout from the National *899 Automobile Dealers Association Used Car Guide, indicating the average value would be approximately $9,000. Although Ms. Murphy testified the car was in an accident, she indicated she received an insurance proceeds check payable to her and the mechanic who fixed the car. The court interprets this testimony to mean the vehicle was repaired as needed, causing no accelerated depreciation in value. Since Ms. Murphy provided no competing values, the court accepts the proof submitted by Ms. Carbone and determines the estate’s one-half interest in the vehicle is worth $4,500.
With respect to the Credit Union loan, the court finds the decedent’s estate and Ms. Murphy are jointly liable. Both parties signed the agreement as buyers of the vehicle, promising to repay the debt. Even though it appears the decedent agreed to borrow funds because Ms. Murphy had insufficient credit to qualify on her own, he did not sign a separate guaranty. Instead, he took an ownership interest in the vehicle and thus benefitted from the use of the loan proceeds, which the court finds distinguishes the decedent from an accommodation or voluntary surety. (Cf. DeForge v Karwoski, 87 AD3d 1323 [4th Dept 2011] [permitting a father to recover from his daughter sums he had paid in connection with her student loan for which he had cosigned and on which she defaulted]; Matter of Tschudy, 18 Misc 2d 457 [Sur Ct, Westchester County 1959] [finding that decedent’s estate was solely liable for repayment of a debt, even though the decedent’s wife had cosigned for the loan and pledged jointly owned stock, when the decedent alone benefitted from use of the loan proceeds].)
The executor argues that since Ms. Murphy is in possession of the 2009 Honda Civic, she should reimburse the full amount of the loan balance paid out of the decedent’s funds. In making this argument, he relies upon cases providing that with respect to real property, a mortgage runs with the land and creditors should first look to the encumbered property for payment before seeking money from an estate. (See Matter of Fleisher, 2015 NY Slip Op 31909[U] [Sur Ct, NY County 2015]; Matter of Ryan, 44 Misc 2d 477 [Sur Ct, Broome County 1964].)
The court acknowledges this precedent and notes the same principle seems to apply to personal property as well. (See EPTL 3-3.6; see also Matter of Griffith, 183 Misc 2d 210, 212 [Sur Ct, Nassau County 2000] [“It is the express policy of the State that encumbrances on property of a decedent are not chargeable at first instance against the assets of the estate”], *900 citing EPTL 3-3.6.)[2] Fleisher, Ryan and Griffith involved property passing to a surviving tenant by the entirety. The courts in those decisions reasoned that the surviving spouses could not receive the decedents’ interest in property, while also asking decedents’ estates to pay all or part of the debt that encumbered the property. Instead, the spouses were found to have received the property subject to the security lien.
The facts in the instant case are somewhat the reverse of this precedent, even though the legal analysis is similar. Here, the estate retained ownership of the decedent’s half interest in the 2009 Honda Civic, i.e., it did not pass to Ms. Murphy as co-owner. As in Fleischer, Ryan and Griffith, the estate cannot expect to receive the value of property while asking the co-owner to pay all of the debt, particularly when both the decedent and Ms. Murphy signed the agreement as buyers. “There is a presumption that two or more persons bound as sureties on the same instrument are cosureties,” with a right to contribution between or among them. (Rosenthal v Conditional Purchase Co., 33 NY2d 983, 984 [1974].) “On the death of a joint obligor in contract, his estate shall be bound as such jointly and severally with the surviving obligor.” (General Obligations Law § 15-106.) According to Restatement (Third) of Suretyship and Guaranty § 57 (1), unless limited by agreement or other circumstances, “a cosurety’s contributive share is the aggregate liability of the cosureties to the obligee divided by the number of cosureties.” In this case, the decedent and Ms. Murphy would each be 50% liable. Contribution is grounded in equitable principles. (See Matter of Balsome, 6 Misc 3d 1040[A], 2005 NY Slip Op 50360[U] [Sur Ct, Nassau County 2005].)
To calculate that figure, the court first looks to the principal balance borrowed from the Credit Union, which was $18,080.11. As between each other, Ms. Murphy was responsible to pay half, or $9,040.06, and the decedent was responsible to pay the other half, or $9,040.05. The Credit Union used $13,646.26 of decedent’s funds to satisfy the principal balance owing on the debt, meaning the decedent’s estate paid $4,606.21 more than it should have relative to Ms. Murphy.[3] The court finds no basis for surcharging Ms. Murphy for the use of the vehicle, since *901 she testified that she paid all maintenance expenses and insurance premiums.
With Ms. Murphy having expressed to the court in her December 23, 2015 “answer petition” that she is of limited means, the court concludes the most effective means for the executor to recover the value of the decedent’s half-interest in the car ($4,500), as well as the overpayment on the loan ($4,606.21), is for the estate to recover the vehicle, sell it, and deduct the share of the proceeds belonging to the estate (totaling $9,106.21). (See SCPA 2104 [4] [“If it appears that the petitioner is entitled to the possession of any property the decree shall direct delivery thereof to him”]; see also SCPA 2105 [3] [permitting the court to make a decree “accordingly” if the fiduciary is holding property owned by another].) Any monies remaining after this deduction, up to the amount of $4,500, can be returned to Ms. Murphy to compensate her for the value of her half-interest in the vehicle. If further funds remain, they are to be divided equally between decedent’s estate and Ms. Murphy. In the event the vehicle sells for less than the amount recoverable by the estate as a result of this proceeding, Ms. Murphy will need to pay the difference to the estate, unless she can establish insolvency. (See Restatement [Third] of Suretyship and Guaranty § 57 [2] [b]; see also Bronner v Walrath, 208 App Div 758, 758 [4th Dept 1924] [“And in determining the proportion of contribution, regard would be had only to the solvent debtors”]; Kimball v Williams, 51 App Div 616, 616-617 [4th Dept 1900] [apportioning contribution as between solvent debtors, while excluding an insolvent debtor].)
Based upon the foregoing, it is hereby decreed, that Gale A. Murphy is in possession of property belonging to the estate of Stanley Raymond Murphy, namely a one-half interest in a 2009 Honda Civic, VIN xxxxxxxx; and it is further ordered, that Gale A. Murphy deliver said identified vehicle, along with the title to said vehicle signed by her, to the offices of Frye & *902 Carbone LLC, 2219 Genesee Street, Utica, New York 13501, or to such other location as may be communicated to Gale A. Murphy by Malorie A. Carbone, Esq., or her representative, no later than July 11, 2016, in substantially the same condition as it currently exists; and it is further ordered, that Andrew A. Murphy, as executor, arrange for the sale of the vehicle within a reasonable time after receiving same, making all prudent efforts to maximize the sales price; and it is further ordered, that of the sales proceeds, Andrew A. Murphy, as executor, may retain on behalf of the estate the sum of $9,106.21, representing the estate’s half-interest in the vehicle worth $4,500 and the estate’s overpayment toward satisfaction of the Credit Union loan in the amount of $4,606.21; and it is further ordered, that any sums remaining be immediately returned to Gale A. Murphy, up to the amount of $4,500, and any sums remaining thereafter be divided equally between Andrew A. Murphy, as executor, and Gale A. Murphy; and it is further ordered, that Andrew A. Murphy, as executor, provide Gale A. Murphy with an accounting as to the sale of the vehicle, which is to include a narrative as to efforts made to maximize the sales price, no later than 30 days after the completion of the sale, regardless of whether surplus sums exist to return to Gale A. Murphy; and it is further ordered, that in the event the sale of the vehicle generates net proceeds less than $9,106.21, Gale A. Murphy is to pay the difference to the estate no later than 60 days after the completion of the sale, unless she can establish insolvency to the satisfaction of Andrew A. Murphy, as executor; and it is further ordered, that personal service of a certified copy of this order upon Gale A. Murphy on or before June 30, 2016 shall be deemed good and sufficient service.

. The total amount deducted from decedent’s account was $13,731.69, which included a $65.43 interest payment and $20 fee.

. These authorities raise the question as to whether the Credit Union properly exercised its right of setoff as opposed to repossessing the vehicle, but that question is not before the court.

. A loan history obtained from the Credit Union shows what part of Ms. Murphy’s monthly payments was applied toward principal and what part *901 was applied toward interest/penalties. The history, however, does not follow a standard amortization table (e.g., amounts paid toward principal over time decrease in some instances), such that the court cannot tell whether Ms. Murphy paid more in fees and less in principal than timely scheduled payments would provide. For purposes of simplicity and efficiency, the court is tailoring its calculations in this decision to principal only, and not allocations of interest or fees as between the parties. If the executor and/or Ms. Murphy wishes to submit more detailed information that would permit a more precise calculation, such documentation should be submitted no later than June 30, 2016.